## OHIO GALVANIZING & MFG. CO. v. SOUTHERN PAC. CO.
### No. 5363.

Circuit Court of Appeals, Sixth Circuit.
April 7, 1930.

U. C. De Ford, of Youngstown, Ohio (William Marshall Bullitt, of Louisville, Ky., and Harrington, De Ford, Huxley & Smith, of Youngstown, Ohio, on the brief), for appellant.

Charles W. Milner, of Louisville, Ky. (Edward P. Humphrey, Louis Seelbach, Jr., and Humphrey, Crawford & Middleton, all of Louisville, Ky., on the brief), for appellee.

Before DENISON and HICKENLOOPER, Circuit Judges, and TUTTLE, District Judge.

TUTTLE, District Judge.

This is an action brought by the plaintiff below, the Ohio Galvanizing & Manufacturing Company, an Ohio corporation, appellant here, to recover from the Southern Pacific Company, a Kentucky corporation, defendant below and appellee here, damages alleged to have resulted from injuries caused to several hundred ice cans while they were being transported by the said defendant as a common carrier. The District Court, in which the action was tried before a jury, at the conclusion of plaintiff's proofs, directed a verdict in favor of the defendant on the ground that the evidence produced was insufficient to warrant a finding that any definite amount of damages was caused by any injury occurring to this merchandise while it was in the possession of the defendant. To review the judgment entered on such directed verdict, the plaintiff has brought the case to this court by an appeal, claiming, by proper assignments of error, that the evidence offered by it made a case which should have been submitted to the jury on the question as to the defendant's liability for the damages alleged. Whether the trial court erred in thus directing a verdict is the sole question here presented.

Viewing the evidence, as we must, in the light most favorable to the appellant, it showed the following facts: The ice cans involved, of which there were approximately seventeen hundred, were of galvanized iron and were manufactured by the plaintiff at Niles, Ohio, and were shipped by it, as consignor, to the Union Ice Company, as consignee, at Watsonville Junction, Cal., for use in connection with the manufacture of ice by the consignee at the point of destination. Their construction was such that the diameter of each was larger at the top than at the bottom of the can and they were "nested," that is, stacked, by the plaintiff, for shipment, in groups, referred to by the defendant as "bundles," each of such bundles containing three or four of such cans piled one inside of another, so that only a small part of the majority of the cans was

visible unless the same were unstacked. These cans were thus shipped by the plaintiff by rail from its factory at Niles, Ohio, to Baltimore, Md., where they were unloaded and transferred to a steamship, by which they were carried to San Francisco, Cal., and there again unloaded and delivered to the defendant for transportation to their final destination at Watsonville Junction, Cal. It does not appear whether there was any inspection, or what was the condition, of any of these cans when they were delivered to the first carrier for shipment to the seaboard or when they were delivered to the steamship company for carriage from Baltimore to San Francisco. The only bills of lading shown by the record were those issued by the defendant at the time of its receipt of said cans at San Francisco. Each of these bills of lading was of the form known as a uniform straight bill of lading and recited the receipt, by the defendant, of a specified number of "bundles" of ice cans, "in apparent good order, except as noted (contents and condition of contents of packages unknown)," for delivery to the consignee as already indicated. Each bill of lading contained a notation, made by an agent of the defendant, when said cans were received by it, to the effect that a specified number of cans (twenty-eight in all) were "dented." Before the defendant received these cans or issued these bills of lading, its representative examined the cans as they were loaded on its cars, at the dock where they had just been unloaded from the steamship, checking the number of bundles so loaded and observing the condition of the cans to the limited extent to which such condition was visible as a result of the manner in which they were nested and thereby concealed from view. After arrival and unloading at the place of delivery by the defendant to the consignee a detailed inspection of the cans was made, and it was found that approximately one thousand cans were in a damaged condition. Thereafter this action was instituted.

It is elementary that in order to establish liability on the part of a carrier for injuries sustained by merchandise while in its possession it is necessary to show, at least, that such merchandise was, when delivered to such carrier, in better condition than it was after receipt at destination. The burden was upon the plaintiff, claiming damages alleged to have resulted from such injuries, to prove, by a preponderance of the evidence, the extent to which the condition of such merchandise was better when it was received by the defendant than when it was delivered to the consignee. Perkett v. Manistee & Northeastern Railroad Co., 191 Mich. 106, 157 N. W. 388.

It is true that evidence tending to show that property was in good condition when it came into the possession of a carrier and was in damaged condition when it left such possession may be sufficient, prima facie and unexplained, to warrant a finding that such carrier is responsible for such damaged condition. In the present case, however, there is no evidence on which the jury could have based a finding as to the condition of these cans at the time when they were received by the defendant as compared with their condition at the time when they were delivered by the defendant to the consignee. Assuming, for the purposes of this case, that the recitals in the bills of lading of the defendant already described, under the circumstances already mentioned, are sufficient to indicate that at least some of the cans involved were in good condition when delivered to the defendant, we think that such recitals, considered in connection with the superficial character of the inspection by the defendant and the opportunity for injury before delivery to the defendant, do not indicate that all of the cans in question were in good condition at the time of such delivery. Mears v. New York, New Haven & Hartford Railroad Co., 75 Conn. 171, 52 A. 610, 56 L. R. A. 884, 96 Am. St. Rep. 192; Shore v. New York, New Haven & Hartford Railroad Co., 99 Conn. 129, 121 A. 344; Sprotte v. Delaware, Lackawanna & Western Railway Co., 90 N. J. Law, 720, 101 A. 518; Cudahy Packing Co. v. Atchison, Topeka & Santa Fé Railway Co., 193 Mo. App. 572, 187 S. W. 149. We have examined the entire record, and we fail to find any evidence which would have enabled the jury to determine the extent of damage which occurred to these cans while they were in the possession of the defendant. The evidence on this point was so vague and indefinite that any verdict for the plaintiff would have been based upon mere conjecture and surmise. The trial court, therefore, did not err in directing a verdict in favor of the defendant, and the judgment must be affirmed.