HELEN H. GEORGE *vs.* COOLIDGE BANK AND TRUST
COMPANY & another.

Essex.   September 17, 1971. — December 16, 1971.

Present: TAURO, C.J., CUTTER, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Bona Fide Purchaser. Pledge. Estoppel. Evidence,* Presumptions and
burden of proof, Extrinsic affecting writing. *Equity Pleading and
Practice,* Appeal, Judicial discretion, Costs. *Damages,* Counsel fees,
For conversion, With specific relief.

There was no abuse of discretion in allowing the defendant in a suit in
equity to file a designation late or in denying a motion, grounded on
the late designation, to dismiss an appeal by the defendant where it
appeared that the defendant was not aware that the transcript was
already on file and incorrectly assumed that the appeal would
activate the transcript. |637-638|

Oral testimony of the plaintiff in a suit in equity that her insurance
policies were delivered to the defendant bank by her son without her
knowledge or consent did not violate the parole evidence rule with
respect to assignments of the policies signed by her. |638-639|

Where life insurance policies, with assignments signed by the insured
owner of the policies, were pledged by another person to a bank
without the owner's knowledge or consent, and representatives of
the bank falsely witnessed signatures on the assignments and
falsely recited thereon acknowledgements of execution thereof, it
was justifiably found that the owner was not estopped to deny her
obligations under the assignments, that the bank was not an
innocent purchaser for value, and that the owner was entitled to a
return of the policies and cancellation of the assignments. |639-640|

A successful plaintiff in a suit in equity to secure a return of her
property improperly pledged by another to a defendant was not
entitled to an award of the counsel fees incurred by her in that very
suit. |640|

A successful plaintiff in a suit in equity to secure return of her stock
improperly pledged by another to a defendant was entitled to
damages equal to the difference between the average fair market
value of the stock at the date of the demand for its return by the
plaintiff and a lesser value on the date when it was actually
returned after substantial delay, even if reasons for the delay were
not the fault of the defendant. |640-643|

BILL IN EQUITY filed in the Superior Court on November
22, 1966.

The suit was heard by *Macaulay*, J. Motions to dismiss an appeal and for leave to file a designation were heard by *Lappin*, J.

*George W. Gold* for the Coolidge Bank and Trust Company.

*Cedric L. Arnold* for the plaintiff.

BRAUCHER, J. This is a bill in equity to compel a return of savings bankbooks, life insurance policies, and stock certificates wrongfully taken from the plaintiff Helen H. George (Mrs. George), by her son, George H. George (George), and pledged to the Coolidge Bank and Trust Company (the Bank) to secure certain loans. The trial judge ordered the Bank to return the pledged items, and to cancel the assignments of the life insurance policies. The bill having been taken pro confesso against George, a decree was entered awarding damages of $1 with the right reserved to Mrs. George to seek a supplemental decree assessing further damages. The Bank entered its appeal on August 11, 1970, but failed to file its designation within the time required by S.J.C. Rule 1:02, 351 Mass. 732, as amended on October 4, 1967 (353 Mass. 804). On September 1, 1970, Mrs. George moved to dismiss the Bank's appeal for failure to comply with this rule, and on September 3, 1970, the Bank moved for leave to file its designation. After a hearing the Bank's motion was allowed and Mrs. George's motion was denied.

The Bank seeks by this appeal a reversal of that part of the final decree ordering it to return the two life insurance policies, and to cancel the accompanying assignments. Mrs. George excepts to the denial of her motion to dismiss the Bank's appeal and to the allowance of the Bank's motion to file its designation late. She also appeals from the final decree, complaining of (a) the failure of the trial judge to award her damages equal to the amount of the decline in the market value of her stock from the day she demanded its return to the day when it is returned, and (b) the failure of the trial judge to award her reasonable counsel fees and costs except as assessed in actions at law. The evidence is reported.

We summarize the relevant facts from the trial judge's report of material facts, rulings of law and order for decree. Mrs. George is a widow, sixty-eight years old. She was born in Greece and had only a limited education there. Her husband, who died in 1962, had been a successful operator of a chain of doughnut shops in eastern Massachusetts. At the time of his death, however, all the shops had been liquidated except the main one in Lynn, which was then taken over by his son George. George acted as executor of his father's estate and handled all his mother's business affairs after his father's death. She had complete confidence in him. In attempting to expand the doughnut business, George found it necessary to incur substantial indebtedness to the Harvard Trust Company. In January, 1968, the Bank took over George's loans. In order to secure several additional loans made by the Bank to him during 1968, George delivered to the Bank as collateral four savings bankbooks, several stock certificates, and two life insurance policies, all belonging to his mother. Several times the indorsement of Mrs. George was forged. Both assignments of the life insurance policies bore the signatures of Mrs. George as insured or owner, George as beneficiary, and "Mary Stilianos formerly Mary George" as beneficiary. The signatures of Mrs. George on the assignments were genuine. The signature of John N. Fisher, executive vice-president of the Bank, appears as a witness opposite the signatures of Mrs. George and Mary Stilianos. On the back side of the assignments appears the signature of Lorraine M. Re, a notary public, under the statement on one assignment that Mrs. George, George, and Mary Stilianos personally came before her and acknowledged that they had executed the assignment, and on the other assignment that Mrs. George so acknowledged. Lorraine M. Re was a secretary for Fisher. Neither he nor she ever saw Mrs. George or Mary Stilianos until after the fraud was revealed.

1. We first discuss the procedural point. Under Rule 1:02 of the Rules of the Supreme Judicial Court, the Bank should

have filed a designation not later than fifteen days "after the filing of the transcript of the testimony, or of the report, or of any report of material facts found by the trial court, whatever last occurs." The transcript was filed on April 15, 1970, but no notice of this was sent to any of the parties. A "Supplemental Report Amending Report of Material Facts, Rulings of Law and New Order for Final Decree" was entered on June 22, 1970. The final decree was entered on July 29, 1970. Counsel for the Bank appealed on August 11, 1970, but did not file a designation because he was not aware that the transcript was already on file in the clerk's office, but assumed instead that his appeal would activate the filing of the transcript. Although this assumption may have been incorrect, we do not think that it requires dismissal of the appeal. Supreme Judicial Court Rule 1:07, 351 Mass. 736, provides in part: "Failure to do any act therein prescribed shall not require dismissal of the appeal or of the report but shall be ground for such orders as the trial court or the Supreme Judicial Court shall deem appropriate which may include dismissal." No abuse of discretion by the judge has been shown.

2. The Bank concedes the correctness of that part of the decree requiring it to return the savings bankbooks and stock certificates, but contends that the decree was in error in its treatment of the life insurance policies and the assignments thereof. We do not think that the judge was plainly wrong in finding, on the basis of the oral testimony of Mrs. George, that "the two policies of life insurance were delivered by the defendant George H. George to the defendant Coolidge Bank and Trust Company without the plaintiff's knowledge or consent." There was no violation of the parol evidence rule in admitting Mrs. George's testimony to this effect because it was not offered "to show any modification or alteration of the written agreement, but that it never became operative, and that its obligation never commenced." *Wilson* v. *Powers*, 131 Mass. 539, 540. *Howland* v. *Plymouth*, 319 Mass. 321, 324. By the terms of each assignment, "so long as the Policy has not been sur-

rendered," Mrs. George reserved the right to designate and change the beneficiary, and the court found on evidence not reported that she has exercised that right and changed the beneficiary of each of the two policies.

3. The Bank also contends that Mrs. George is estopped from denying her obligations under the assignments. The Bank claims that it is an innocent purchaser for value, citing *Edgerly* v. *First Natl. Bank*, 292 Mass. 181, 183–184, a case involving a pledge of corporate stock. We have recognized the estoppel of a rightful owner of an insurance policy "to set up his title against a *bona fide* purchaser for value from one who had not the right to sell," arising "when by his own conduct he has so clothed the wrongdoer with the *indicia* of ownership as to justify third persons in regarding the wrongdoer as either the rightful owner or as having authority from that owner." *Herman* v. *Connecticut Mut. Life Ins. Co.* 218 Mass. 181, 186. Where, however, as in the present case, the assignment clearly indicates that the wrongdoer is not clothed with the absolute title, we have held that a purchaser taking a policy to secure a loan is put upon inquiry as to the source and extent of the wrongdoer's title. *Stone* v. *Sargent*, 220 Mass. 445, 450.

If a negotiable instrument were here in issue, whether commercial paper or investment securities, the Bank in the present circumstances would have the burden of establishing that it was a holder in due course or a purchaser for value without notice under the Uniform Commercial Code. *Elbar Realty, Inc.* v. *City Bank & Trust Co.* 342 Mass. 262, 267–268. *Bank of Am. Natl. Trust & Sav. Assn.* v. *Rocco*, 241 F. 2d 455, 457 (3d Cir.), cert. den. sub nom. *Parnell* v. *Bank of Am. Natl. Trust & Sav. Assn.* 353 U. S. 973. *Bowling Green, Inc.* v. *State St. Bank & Trust Co.* 425 F. 2d 81, 83 (1st Cir.). G. L. c. 106, §§ 3–307 (3), 8–105 (2) (d). An insurance policy is not a negotiable instrument, and it would be anomalous if the law were to accord the purchaser greater protection than in the case of a negotiable instrument. In the interest of simplicity and uniformity the Bank should be held by analogy to have the burden of establishing that it

was an innocent purchaser in the present case unless some countervailing reason appears. See *Thomas G. Jewett, Jr. Inc.* v. *Keystone Driller Co.* 282 Mass. 469, 476. Compare *Budget Plan, Inc.* v. *Savoy,* 336 Mass. 322, 330, n. 1. In the present case the Bank falsely witnessed and acknowledged signatures on the assignments at a time when George was completely in its financial control and restraint. These facts fully warrant the judge's refusal to accord the Bank protection as an innocent purchaser. See *Canajoharie Natl. Bank* v. *Diefendorf,* 123 N. Y. 191, 202; *Brown* v. *Rosetti,* 66 Misc. 2d (N. Y.) 239, 240; *Norman* v. *World Wide Distribs. Inc.* 202 Pa. Super. 53, 57–58. Compare *General Inv. Corp.* v. *Angelini,* 58 N. J. 396, 404–405; *Star Credit Corp.* v. *Molina,* 59 Misc. 2d (N. Y.) 290, 294; *Philadelphia Title Ins. Co.* v. *Fidelity-Philadelphia Trust Co.* 419 Pa. 78, 81.

4. The judge did not award Mrs. George reasonable counsel fees and costs, except as assessed in an action at law, and Mrs. George contends that this was error. She cites *Malloy* v. *Carroll,* 287 Mass. 376, 385, in support of her argument for counsel fees. In *Chartrand* v. *Riley,* 354 Mass. 242, 243–245, we disapproved the language in *Malloy* which suggests that counsel fees are recoverable in "any case where the plaintiff has to seek his remedy in the courts." Counsel fees are collectible only in exceptional cases of which this is not one. *M. F. Roach Co.* v. *Provincetown,* 355 Mass. 731, 732. *Gallinaro* v. *Fitzpatrick,* 359 Mass. 6, 12. *United Tool & Industrial Supply Co. Inc.* v. *Torrisi,* 359 Mass. 197, 199. Mrs. George's brief on appeal also refers to expenditures for depositions, expert witness fees, transcribing of testimony, printing of the record and testimony, and costs of printing for briefs. We do not know why the judge did not award those costs, but G. L. c. 261, § 13, places the matter "wholly in the discretion of the court," and no abuse of that discretion has been shown. See *Chartrand* v. *Chartrand,* 295 Mass. 293, 297.

5. Mrs. George contends that she should be awarded damages equal to the difference between the average fair

market value of her stock on October 18, 1968, the date of the demand for its return, and the corresponding value on the date in the future on which it actually is returned. Since all of the stock in question is traded on the New York Stock Exchange or on the over-the-counter market, there is no problem of valuation. The bill of complaint prays for general relief, and a court of equity, once it has taken jurisdiction over a cause, may award damages which arise out of the wrongful conduct. *Alden Bros. Co.* v. *Dunn,* 264 Mass. 355, 363. See *Kaplan* v. *Cavicchia,* 107 N. J. Super. 201, 205–206.

In an action for damages for the conversion of stock, or for breach of a contract to deliver stock, the measure of damages is the fair market value at the time of conversion or failure to deliver, with interest. *Hall* v. *Paine,* 224 Mass. 62, 64–71. *Somerville Natl. Bank* v. *Hornblower,* 293 Mass. 363, 370. *Manhattan Clothing Co. Inc.* v. *Goldberg,* 322 Mass. 472, 475. Compare, as to replevin, *Stevens* v. *Tuite,* 104 Mass. 328, 333, 334. The owner is not bound to accept a return of his property, but if he retakes it he may recover as damages the difference between the value of the property when converted and when returned, plus damages for loss of use during the period of wrongful detention. *Jackson* v. *Innes,* 231 Mass. 558, 560. *Lawyers Mortgage Inv. Corp. of Boston* v. *Paramount Laundries Inc.* 287 Mass. 357, 361. *Food Specialties, Inc.* v. *John C. Dowd, Inc.* 339 Mass. 735, 748. Cf. *Clement & Hawkes Mfg. Co.* v. *Meserole,* 107 Mass. 362, 364. These rules have been applied in equity as well as at law. *Handy* v. *Miner,* 258 Mass. 53, 63. *Lawyers Mortgage Inv. Corp. of Boston* v. *Paramount Laundries Inc.,* supra. *Somerville Natl. Bank* v. *Hornblower,* supra. Compare *Potier* v. *A. W. Perry, Inc.* 286 Mass. 602, 606; Restatement: Torts, §§ 922 (a), 927 and comment a.

In other States, when shareholders have sued corporations to vacate the cancellation of shares of stock or to compel transfer thereof, incidental damages for loss of value during a period of delay have sometimes been denied. *Atherton* v. *Michigan Guar. Corp.* 237 Mich. 133, 138. *Virginia Pub.*

*Serv. Co.* v. *Steindler,* 166 Va. 686, 692–698. See *Owen* v. *Merts,* 240 Ark. 1080, 1091–1093 (specific performance of contract to sell stock); Annotation, 28 A. L. R. 3d 1401, 1403–1404. *Contra, Byrne* v. *Union Bank,* 9 Robinson, 433, 437 (La.); *Bayer* v. *Airlift Intl. Inc.* 111 N. J. Super. 461, 467–469. Cf. G. L. c. 106, § 8–401 (2); comment 3 to § 8–401 of the Uniform Commercial Code, 2 U. L. A. (Master Ed.); *Pirchio* v. *Noecker,* 226 Ind. 622, 629 (damages plus specific performance of contract to sell real estate). Those decisions seem to rest in part on a theory that specific relief is inconsistent with recovery of damages and that the stockholder must make an election between the inconsistent remedies. See *Singleton* v. *Cuttino,* 107 S. C. 465, 469; Fletcher, Cyc. Corporations (Perm. ed.) § 5523. Such a theory is contrary to our practice of awarding incidental damages in a decree granting specific relief. *Hamilton* v. *Coster,* 249 Mass. 391, 396–397. *Winchell* v. *Plywood Corp.* 324 Mass. 171, 181. *Kaplan* v. *Cavicchia,* 107 N. J. Super. 201, 205–206. The remedies are not inconsistent. Am. Law of Property, § 11.71. Pomeroy, Eq. Jur. (5th ed.) § 237b. Williston, Contracts (3d ed.) §§ 1400, 1444A. Restatement: Contracts, § 384 (2).

In the present case the judge said: "The great decline of stock market values since 1968 is now a matter of common knowledge. However, too many arguments can be advanced to show that it would be inequitable to assess damages on a basis of loss of stock market trading valuations from October, 1968, to June of 1970, such as the outstanding injunctions, delay of trial caused by necessary and extensive trial preparations, unexpected illness of counsel, preparation of briefs, and the fact that the case came before a judge for trial who had already many undecided cases to resolve and determine in his out-of-court time before he could make the report of material facts and a decision in this case."

We do not think such "arguments" justify a refusal to follow a rule which is a rational application of general principles by which damages have been measured during many years in a vast variety of causes, whose application

to the present facts tends toward a symmetrical system of law, which works justice in most cases, is simple and certain, and finds support in other jurisdictions. See *Hall* v. *Paine*, 224 Mass. 62, 70–71. One who converts property to his own use becomes responsible for it, and any depreciation or loss, though occurring without his fault, falls upon him. *Spooner* v. *Manchester*, 133 Mass. 270, 272. *Lawyers Mortgage Inv. Corp. of Boston* v. *Paramount Laundries Inc.* 287 Mass. 357, 361–362.

The "outstanding injunctions" against disposition of the stock do not make it inequitable to award the damages claimed. There is no suggestion that the Bank sought the consent of Mrs. George to a sale without prejudice to the rights of the parties, that it urged Mrs. George to sell the stock, or that Mrs. George chose to hold it, believing that it would increase in value, and we do not pass on the effect of such a showing. See *Bourdette* v. *Sieward*, 107 La. 258, 265; *Easley* v. *First Natl. Bank*, 172 Va. 94, 107; *Callahan* v. *Jones*, 200 Wash. 241, 256. Mrs. George is entitled to the damages claimed.

6. The final decree is affirmed, subject to the following modification. The case is remanded to the Superior Court for determination of the amount of damages to which Mrs. George is entitled under point 5 of this opinion. The final decree is to be modified by adding a provision for the recovery of those damages. Mrs. George's exceptions are overruled. Mrs. George is to have costs of appeal.

*So ordered.*